KEY's Ex'r. *vs.* PARNHAM.

A written agreement cannot be explained by a subsequent letter of one of the parties.

APPEAL from *Saint Mary's* county court. Action of *Assumpsit.* The declaration contained four counts—1.

Where, upon the face of an agreement, one of the contracting parties appears plainly to be acting as the agent of another, the stipulations of the agreement operate solely to bind the principal, unless it manifestly appears that the agent intended to superadd or substitute his own responsibility for that of his principal.

An agreement, that "I have this 9th January, 1817, hired of *G. P.* the following slaves, for the use of *R. K. H,* to give $ 30 as wages for each of the slaves, and to furnish them with all necessary clothing and food, (then stating the names of the slaves,) and signed *P. K.*"—*Held,* not to bind *P. K.* personally;

1825.

Key
vs
Parnham]

That *Key*, the defendant's testator, (now appellant,) had hired of the plaintiff, (the appellee,) sundry slaves for the use of *R. K. Heath*, in consideration whereof, *Key* then and there, in writing, undertook and faithfully promised the plaintiff to pay him $80 for each and every slave, amounting in the whole to $480. 2. That *Key* was indebted to the plaintiff for the hire and wages of sundry slaves, &c. 3. *Quantum meruit* for the hire of slaves, &c. 4. That *R. K. Heath* was indebted to the plaintiff in $480, in consideration of the premises; and that the plaintiff, at the request of *Key*, would forbear and give time to *Heath* for payment until the 1st of January 1818. *Key* undertook and promised to pay the plaintiff on that day, &c. The defendant pleaded *non assumpsit testatoris*. At the trial, the plaintiff offered in evidence the following written agreement: "I have, this 9th of January 1817, hired of *George Parnham*, Esq. the following six negro men, for the use of *Richard Key Heath*, of *Baltimore* county, and for and during the present year, and agree, on behalf of the said *Heath*, to give eighty dollars as wages for each of the said negroes, and to furnish them with all necessary clothing and food, viz. *Juba, Davy, James, Richard, Michael* and *Shadrick*.       *Philip Key*."
Which was admitted to be in the handwriting of the testator. And proved that the slaves mentioned in said writing were sent to *Heath*, and hired by him agreeably to the terms of the agreement. The plaintiff also produced the following letter, admitted to be in the handwriting of the defendant's testator: "Dear Sir, Mrs. *Key* is anxious I should hire your sister's woman for Mrs. *Heath*. If then she will take no less than $25, and the woman can go up with the other hands, you will send her up, and I will be answerable for the wages, clothing and food. The woman will have a tender, good mistress; and indeed I know that great care will be taken of the whole of them.

*P. Key*.

*Indian Town*, 12 January, 1817."
The defendant then produced a witness, who proved that *Key* showed to the witness a letter from *Heath*, requesting *Key* to hire for him a large number of hands. This was in the winter 1817, and before the hiring of the negroes mentioned in the agreement; the price of the hands was not limited, but *Key* was requested not to exceed $80 each.

The defendant also proved, that *Heath* resided, at the time of the agreement, in the neighbourhood of *Baltimore*, and had done so long before and did long after; and that *Heath* was always, up to the year 1819, generally known as a man of character and of high pecuniary credit. That the intestate, at the time of making the agreement, communicated to the plaintiff that the slaves were for the use of *Heath*, and that he was authorised by *Heath* to hire them; and further, that *Heath* had been at *Chaptico*, in *Saint Mary's* county, the year before the agreement was made, and hired a good many slaves in the said county. The defendant then prayed the opinion of the court to the jury, that the letter of *Key*, the defendant's testator, was not evidence in the cause, and that said testator was acting as agent in making said agreement, and therefore was not liable in this action. But the court, [*Plater* A. J.] refused to give this opinion, and allowed said letter to be read in evidence to the jury; and further directed the jury, that it was the opinion of the court, from the face of the agreement, and the other evidence, that the plaintiff was entitled to recover. The defendant excepted; and the verdict and judgment being for the plaintiff, the defendant appealed to this court.

The cause was argued before BUCHANAN, Ch. J. EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Ashton*, the Appellant, in person, relied upon *M'Donough vs. Templeman*, 1 *Harr. & Johns.* 156, and *The Mechanics Bank vs. The Bank of Columbia*, 1 *Wheat.* 326.

*Stone*, for the Appellee, submitted the case to the court without argument.

DORSEY, J. delivered the opinion of the court. After stating the facts, and the opinion of the court below, he proceeded:

To this opinion of the court the defendant excepted; and, it appears to this court, not without cause. Let it for the moment be admitted, that matter *de hors* the written instrument itself may be resorted to in explanation of the meaning of the agreement of the 9th of January, yet the letter of the 12th of January cannot be received for that purpose; it is no part of the *res gesta* intended to be contained in the agreement on which this action has been instituted; it is a proceeding subsequent in point of time, relating entirely to a different subject, and being irrelevant

1825.

Key
vs
Pawham

to the matter in issue in the cause, is wholly inadmissible as evidence before the jury.

In refusing the prayer of the defendant as to the agency of the testator, and in instructing the jury that the plaintiff was entitled to recover, this court think that the county court also erred   Wherever, upon the face of an agreement, a party contracting plainly appears to be acting as the agent of another, the stipulations of the contract are to be considered as operating solely to bind the principal; unless it manifestly appears by the terms of the instrument that the agent intended to superadd or substitute his own responsibility for that of his principal.   In such case, and in such case only, if acting within the scope of his powers, is he personally answerable.   No such intention is manifested by the present agreement; it states that the negroes were hired for the use of *Richard K. Heath*, and the stipulation to pay is made, in so many terms *on his behalf;* thereby repelling any inference that might otherwise be drawn, to involve him personally on this contract.   A much stronger case than the present was decided by the court of appeals of this state at June term, 1804, reported in 1 *Harr. & Johns.* 156, *M'Donough vs. Templeman.*  There, although in the introductory part of the agreement the defendant describes himself as acting on behalf of his principal, yet when he stipulates for the payment of the hire of the negroes, without any express reference or allusion to his principal, he binds himself in precisely the same terms that he would have used had it been the intention of the parties that he alone, and not those for whom he contracted, was to be bound for the debt.   Yet the court of appeals, looking to the intentions of the parties, as deducible from the relative situation in which they stood, determined that the engagements of the defendant, although by the expressions used involving himself only, were to be understood as referring to his representative character, and not as inducing any personal liability on him.   In the case at bar, the defendant's testator, in the very clause of the agreement on which this action is founded, states in express terms, that he agrees *on behalf* of his principal to pay; thereby evincing the most unequivocal intention not to pledge his own personal responsibility.

The court dissent from the opinions given by the court below, and therefore reverse their judgment.

JUDGMENT REVERSED.